**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION**

STATE AUTOMOBILE MUTUAL INSURANCE COMPANY                    PLAINTIFF

V.                               NO. 4:21-cv-1080-KGB

KELLEY LENSING, INDIVIDUALLY AND AS MOTHER,
NEXT FRIEND AND NATURAL GUARDIAN OF L.L., A MINOR;
JOSEPH LENSING, INDIVIDUALLY AND AS FATHER,
NEXT FRIEND, AND NATURAL GUARDIAN OF L.L., A MINOR;
TERESA STURCH, INDIVIDUALLY AND AS MOTHER,
NEXT FRIEND AND NATURAL GUARDIAN OF S.W., A MINOR; &
RUTSEY WILLIAMS, INDIVIDUALLY AND AS FATHER,
NEXT FRIEND AND NATURAL GUARDIAN OF S.W., A MINOR        DEFENDANTS

**SEPARATE DEFENDANT STURCH & WILLIAMS'
BRIEF IN SUPPORT OF RESPONSE TO
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Come now Defendants, Teresa Sturch and Rustey Williams, and for their Response to

Plaintiff's Motion for Summary Judgment filed August 26, 2022, state as follows:

**FACTS**

From September 26, 2019, to September 26, 2020, Plaintiff State Automobile Mutual

Insurance Company ("State Auto") provided automobile liability insurance (policy no. AAR 0054397,

"the Policy") for Defendant Kelley Lensing. Statement of Undisputed Material Facts ("SUMF") ¶ 2;

Ex. B & Ex. C, ¶ 10. Under the terms of the Policy, State Auto was obligated to "pay for 'bodily injury'

or 'property damage' for which any 'insured' becomes legally responsible because of an auto accident."

SUMF ¶ 3; Ex. B. The Policy further defines an "Insured" as "[y]ou or any 'family member'." SUMF

¶ 4; Ex. B. Kelley Lensing is the biological mother of L.L. SUMF ¶ 5; Ex. A & Ex. B. Because L.L. is

the biological son of Kelley Lensing, L.L. is an "Insured" under the Policy in question. SUMF ¶ 6; Ex.

B. However, under Exclusion A.8. of the Policy, State Auto "do[es] not provide Liability Coverage

for any 'insured' . . . [u]sing a vehicle without a reasonable belief that that 'insured' is entitled to do

so." SUMF ¶ 7; Ex. B.

1

On August 14, 2020, while this policy was in effect, L.L. hosted a party for his friends at his residence. SUMF ¶ 9; Ex. D, pg. 24, ln. 16-25. At the party, L.L. asked Wyatt Rider if he could drive Wyatt Rider's parent's Camaro. SUMF ¶ 10; Ex. D, pg. 35, ln. 23-25 & Ex. E, ¶ 1. Wyatt Rider gave L.L. permission to drive the Camaro in question. SUMF ¶ 13; Ex. D, pg. 35, ln. 23-25 & Ex. E, ¶

On August 14, 2020, L.L. was driving the Camaro in question with Wyatt Rider's permission. SUMF ¶ 15; Ex. D, 35, ln. 23-25 & Ex. E, ¶ 3. Wyatt Rider had the authority to allow L.L. to drive his parent's 2016 Chevrolet Camaro on August 14, 2020. SUMF ¶ 12; Ex. E, ¶ 5. Wyatt Rider even helped L.L. connect L.L.'s phone to the Camaro in question before leaving L.L.'s house. SUMF ¶ 14; Ex. D, pg. 36, ln. 18-20. It is Wyatt Rider's opinion that when he gave L.L. permission to drive the Camaro in question, L.L. was driving the Camaro with the reasonable belief that L.L. was allowed to do so. SUMF ¶ 16; Ex. E, ¶ 4.

While driving the Camaro in question, another passenger in the Camaro asked L.L. to slow down, but instead of slowing down, L.L. sped up. SUMF ¶ 17; Ex. D, pg. 69, ln. 7-12. Shortly thereafter, L.L. lost control of the Camaro, left the roadway, and rolled into a tree line. SUMF ¶ 18; Ex. D, pg. 49, ln. 16-20 & Ex. F. Upon arriving at the scene, the Cleburne County Sheriff's Office found L.L. had fled the scene and that S.W. had a "severely broken leg." SUMF ¶ 19; Ex. F. L.L. initially fled the scene and lied to the responding officer, falsely stating that Wyatt Rider was driving the Camaro at the time of the collision that injured S.W., but L.L. finally admitted L.L. was actually driving the Camaro with Wyatt Rider's permission and that his careless driving caused the tragic crash. SUMF ¶ 20; Ex. F.

## SUMMARY JUDGMENT STANDARD

Summary judgment is only appropriate when the movant shows that there is no genuine dispute regarding any material fact and that the movant is entitled to judgment as a matter of law. Fed.

R. Civ. P. 56(a). The burden is on a party seeking summary judgment to demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Farver v. McCarthy*, 931 F.3d 808, 811 (8th Cir. 2019). A party opposing summary judgment does not have an obligation to establish a genuine issue of material fact for trial until and unless the proponent of summary judgment meets the threshold burden of demonstrating that there is an absence of material fact. See *Prudential Ins. Co. v. Hinkel,* 121 F.3d 364, 366 (8th Cir. 1997); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986). Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).

## ARGUMENT

As set forth more fully in Argument Section A. of these Defendants' Brief in Support of Motion for Summary Judgment filed July 21, 2022 (which Defendants incorporate by reference here)(Docket No. 17), the plain language of Kelley Lensing's auto policy provides that L.L. is an "insured." Notably, Plaintiff's Motion for Summary Judgment does not dispute this point. Rather, Plaintiff's Motion for Summary Judgment argues that coverage should be barred pursuant to Section A.8 of the auto policy, which purports to exclude coverage where an insured was "[u]sing a vehicle without a reasonable belief that that 'insured' is entitled to do so." Not only does Plaintiff fail to meet its burden of showing that the undisputed facts establish that L.L. was using the Camero *without* a reasonable belief that he was entitled to do so, as further articulated in Defendants' Motion for Summary Judgment, the undisputed facts actually compel the opposite conclusion – that L.L. *had* a

3

reasonable belief that he was entitled to drive the Camero. Plaintiff's argument is without merit, and Plaintiff's motion for summary judgment should be denied.

First, the "entitlement exclusion" that Plaintiff relies upon to support its argument in this case is ambiguous and does not conclusively eliminate coverage. "Once it is determined that coverage exists, it then must be determined whether the exclusionary language within the policy eliminates the coverage." *See Castaneda v. Progressive Classic Ins. Co.*, 357 Ark. 345, 351, 166 S.W.3d 556, 560 (2004) (citing *Norris v. State Farm Fire & Cas. Co.*, 341 Ark. 360, 16 S.W. 3d 242 (2000)). "Exclusionary endorsements must adhere to the general requirements that the insurance terms must be expressed in clear and unambiguous language." I*d.* "Language is ambiguous if there is doubt or uncertainty as to its meaning and it is fairly susceptible to more than one reasonable interpretation." *Harasyn v. St. Paul Guardian Ins. Co.*, 349 Ark. 9, 18, 75 S.W.3d 696, 701 (Ark. 2002). When language is ambiguous, the policy will be construed "liberally in favor of the insured and strictly against the insurer." *See Castaneda*, at 351, 166 S.W.3d at 560–61. Plaintiff argues that the entitlement exclusion bars coverage in this case because the fact that L.L. did not have a valid driver's license and had been drinking the day before the accident rendered any belief L.L. may have had regarding his permission to use the vehicle unreasonable. But the entitlement exclusion itself contains no language expressly requiring a valid drivers license or other compliance with legal requirements as a condition of coverage. To the extent that Plaintiff now seeks to enforce the entitlement exclusion in this manner, the language is ambiguous and cannot be used to avoid coverage.

Plaintiff cites two Arkansas federal district court opinions for the proposition that the entitlement exclusion contained in Kelley Lensing's auto policy is unambiguous: *Cornerstone National Insurance Company v. Rodriguez*, 2021 WL 141699 and *Allstate Ins. Co. v. U.S. Fidelity and Guar. Co.*, 663 F.Supp. 548 (1987). However, neither of these cases support Plaintiff's contentions in the case at bar.

4

In *Cornerstone*, any statement as to whether entitlement exclusions are ambiguous was simply dicta because that issue was not before the court at that time. *See Cornerstone*, 2021 WL 141699 at *3 ("Neither party argues the exclusion is ambiguous[.]").  Further, in *Cornerstone*, the driver of the car and both his parents (the owners of the car) all testified that the driver did not have permission to drive the vehicle at the time of the wreck. *Id.*  In light of this testimony, the court determined "[n]o reasonable juror would find that [the driver] had a reasonable belief to drive the use the vehicle; therefore, the reasonable belief exclusion applies." *Id.*  The court did not reference any other facts in its determination of this issue. *Id.*  *Cornerstone* only stands for the proposition that one who truly lacks permission to drive another person's vehicle does not have a reasonable belief he or she is entitled to do so.  The facts of this case are directly contrary to those in *Cornerstone*. In this case, Wyatt Ryder's testimony was the exact opposite of the testimony in *Cornerstone* because Ryder testified that L.L. was driving the vehicle with his permission and with a reasonable belief that he was entitled to do so. Thus, the holding in *Cornerstone* is of no moment here.

Plaintiff's reliance on the decision in *Allstate Ins. Co. v. U.S. Fidelity and Guar. Co.* is similarly unavailing because the court's ambiguity determination was directly tied to the facts of the case, which are markedly dissimilar from those here.  In *Allstate*, an Arkansas Tech college fraternity member took the keys of another fraternity member, who was sleeping, leaving the other fraternity member stranded at a hotel outside of Fort Smith without other transportation. There, like in *Cornerstone*, the driver did not have permission to drive the vehicle in question, and the court determined there was zero evidence that would support a reasonable belief that the driver was entitled to do so, so the exclusion barred coverage. See *Allstate* at 551, 554.  The *Allstate* court did address the ambiguity question and determine that the entitlement exclusion was unambiguous, *but* (1) the court was careful to tie that conclusion to the specific facts of *Allstate*, (2) the court's stated rationale and navigation of countervailing caselaw would suggest a different result regarding ambiguity in the case at bar, and (3) the court's conclusion

5

that the entitlement exclusion was unambiguous extended no further than the following interpretation: "This provision means that, in order for there to be coverage, the trier of fact must find that the person using the vehicle believed that he was entitled to do so and that such belief was reasonable." The following excerpt encompasses the *Allstate* court's navigation of the ambiguity question:

> [T]he court finds that the words "using a vehicle without a reasonable belief that the person is entitled to do so" have a plain and unambiguous meaning. **This provision means that, in order for there to be coverage, the trier of fact must find that the person using the vehicle believed that he was entitled to do so and that such belief was reasonable.** As the Court of Appeals of Georgia said in *Nationwide Mut. Ins. Co. v. Southern Trust Ins. Co., et al.*, 330 S.E.2d 443 (Ga.App.1985):
>
>> The use of the term 'reasonable belief' in the exclusionary clause provides an objective standard by which the trier of fact may determine the substance of a claimant's action. From the language of the clause it is clear that coverage is excluded if the driver (a) knew he was not entitled to drive the vehicle, or (b) if he claimed he believed he was entitled to drive the vehicle, but was without reasonable grounds for such belief or claim.
>
> It is true that other state courts have held that this provision of the "plain language" policy is ambiguous and have found that there is coverage under the facts of those cases. **However, the court believes that these cases can be distinguished on their facts**. **In each of these cases**, the driver operating the insured vehicle at the time of the accident **was under age** and, under the law of the state of his residence, was not permitted to drive. The insurance carriers contended that, irrespective of what the driver's state of mind may have been in relation to whether he had the permission of the owner of the vehicle to drive it, coverage is still excluded because he was not "entitled" to drive under state law. These two state courts, in effect, held that **if the insurance carriers intended the clause to so provide, they should have said so.** Both courts held that there was coverage.

*Allstate* at 553-554. In other words, to reach its conclusion that the entitlement exclusion was unambiguous, the *Allstate* court distinguished the facts of its case, where there was "no evidence" supporting a reasonable belief that the driver was entitled to drive the vehicle (*Id.* at 554), from other cases in which <u>the driver was under age but had permission to drive the vehicle</u>, where courts have determined the interpretation and application of the entitlement exclusion to in fact be ambiguous.

Plaintiff cites to cases from three other jurisdictions where courts have found entitlement exclusions to be unambiguous (New Hampshire - *Progressive v. Concord*, 151 N.H. 649; Illinois - *Century*

*v. Tracy*, 339 Ill.App 3d 173; and Michigan - *Huggins v. Bohman*, 228 Mich.App. 84), yet these citations do not reflect the majority rule. "[R]egardless of the fact that one is required to have an operator's license to legally operate a motor vehicle, the majority of jurisdictions appear to focus on the user's reasonable belief of entitlement to operate a particular motor vehicle, and not whether the user was licensed to drive."  Note, *The Entitlement Exclusion in the Personal Auto Policy:  The Road to Reducing Litigation in Permissive Use Casers or a Dead End?* 84 KY. L. J. 349, 378 (1995).

Regarding Plaintiff's argument here, most courts addressing this question conclude that the entitlement exclusion is ambiguous as applied to unlicensed drivers, and that if an insurer wishes to exclude unlicensed drivers, it should simply say so in the policy.  See, e.g., *State Auto. Mut. Ins. Co. v. Ellis*, 700 S.W.2d 801, 802-803 (Ky. Ct. App. 1985 ("The policy does not offer guidance as to what constitutes a 'reasonable belief,' nor does it specify whether 'entitled' means simply obtaining permission from the owner of the vehicle or whether a valid license from the applicable state would also be required to avoid exclusion from coverage."); *Canadian Indem. Co. v. Heflin*, 151 Ariz. 257, 259, 727 P.2d 35, 37 (1986) ("The exclusion at issue here is clearly ambiguous."); *Safeco Ins. Co. of Am. v. Davis*, 44 Wash. App. 161, 166–67, 721 P.2d 550, 553 (1986) ("Safeco argues that the policy was not underwritten with a 14–year-old unlicensed driver in mind and that a reasonable person would not expect an insurance policy to provide coverage under the circumstances of the instant case. However, if Safeco intended simply to exclude coverage for unlicensed and underaged drivers, it could have done so in clear terms.").

Additionally, the Georgia decision in *Nationwide Mut. Ins. Co. v. Southern Trust Ins. Co.*, 330 S.E.3d 443 (Ga. App. 1985)) which the court relied on in *Allstate* in reaching its conclusion that the entitlement exclusion was not ambiguous and which Plaintiff here relies on in its Summary Judgment brief was later overturned by the Supreme Court of Georgia.  In *Hurst v. Grange Mut. Cas. Co.*, the

Supreme Court of Georgia spelled out in detail why entitlement exclusions such as that contained in

Kelley Lensing's auto policy are ambiguous:

> Since the insurance contract does not contain a definition of the word "entitled," we conclude that the exclusion at issue is susceptible of three logical and reasonable interpretations: that the user must be authorized by law to drive in order to reasonably believe he is entitled to use a vehicle; that the user must have the consent of the owner or apparent owner in order to reasonably believe he is entitled to use the vehicle; or, that the user must have both consent and legal authorization in order to be entitled to use the vehicle. The number of reasonable and logical interpretations makes the clause ambiguous (*Lakeshore Marine v. Hartford Accident,* supra, 164 Ga.App. 417, 296 S.E.2d 418), and the statutory rules of construction require that we construe the ambiguous clause against the insurer. OCGA § 13-2-2(5). **Accordingly, we adopt the interpretation least favorable to the insurer and determine that the clause excludes from coverage only those non-owner drivers who use a vehicle without a reasonable belief that they had the permission of the owner or apparent owner to do so.** Accordingly, it was error to grant summary judgment to the insurer in the case at bar when there was undisputed evidence that the non-owner user had the express permission of the owner to use the vehicle. In so holding, we must overrule those cases which can be read to hold that, as a matter of law, the clause excludes from coverage those unlicensed non-owner drivers who use the vehicle with the permission of the owner or apparent owner: *Miller v. Southern Heritage Ins. Co,* supra, 215 Ga.App. 173, 450 S.E.2d 432; *Cincinnati Ins. Co. v. Mullinax,* 215 Ga.App. 331, 450 S.E.2d 336; *Cincinnati Ins. Co. v. Plummer,* supra, 213 Ga.App. 265, 444 S.E.2d 378; and *Safeway Ins. Co. v. Jones,* supra 202 Ga.App. 482, 415 S.E.2d 19. **Furthermore, to the extent they hold the exclusion clause to be unambiguous, we overrule *Nationwide Mut. Ins. Co. v. Southern Trust Ins. Co.,* supra, 174 Ga.App. 513, 330 S.E.2d 443**, and *Ga. Farm Bureau Mut. Ins. Co. v. Fire, etc., Ins. Co.,* supra, 180 Ga.App. 777, 350 S.E.2d 325.
>
> **There is no question that an insurer has a right to restrict the operation of vehicles insured by it to persons legally qualified to operate an automobile.** Appleman, Insurance Law and Practice (Buckley ed.), Vol. 6C, § 4401, p. 278. All semblance of ambiguity is removed by an exclusion relieving the insurer from liability should the vehicle be driven in violation of any law as to drivers' licenses. Id., at 279. The "unlicensed driver exclusion" has been found to be within public policy when applied in a situation wherein the victims of the unlicensed driver had access to insurance funds. *Travelers Ins. Co. v. Progressive Preferred Ins. Co.,* 193 Ga.App. 864, 865, 389 S.E.2d 370 (1989). See also *Progressive Preferred Ins. Co. v. Williams,* 864 F.2d 110 (11th Cir.1989) wherein the 11th U.S. Circuit Court of Appeals found an "unlicensed driver exclusion" not void as against Georgia public policy to the extent the unlicensed driver sought liability coverage for injuries she inflicted. As the exclusion at issue did not clearly and distinctly exclude unlicensed drivers from coverage, it cannot be read as removing from the driver the protection insurance coverage offers. *American Southern Ins. Co. v. Golden,* supra, 188 Ga.App. at 586, 373 S.E.2d 652.
>
> *Judgment reversed.*

*Hurst*, 266 Ga. 712, 716, 470 S.E.2d 659, 663–64 (1996) (emphasis added).

In short, as the majority of courts have recognized when faced with this question, use of the exclusion exception to exclude from coverage drivers who have authority to drive the vehicle but lack a legal prerequisite such as a license, renders the exclusion ambiguous and unenforceable. What the ambiguity question really boils down to is the control enjoyed by the Plaintiff insurance company, who gets to draft its policies however it wants, and the expectations of someone like Kelley Lensing, an ordinary person who was just purchasing an auto insurance for her family.  Plaintiff's comparison of the exclusion's "entitle[ment]" language to language contained elsewhere in Kelley Lensing's auto policy relating to Personal Injury Protection (contemplating "permission of the owner") does not support Plaintiff's proposed interpretation and application of the entitlement exclusion in the case at bar, nor does it unwrite the ambiguous character of the entitlement exclusion itself.  "Courts are required to strictly interpret exclusions to insurance coverage and to resolve all reasonable doubt in favor of an insured who had no part in the preparation of the contract." *McGarrah by McGarrah v. Southwestern Glass Co.*, 41 Ark. App. 215, 218, 852 S.W.2d 328, 330 (Ark. App. 1993).  As in *Hurst* and the other cases cited above, if Plaintiff wanted to exclude an insured's coverage for any particular reason, including an "unlicensed driver" exclusion, it should have done so clearly and expressly in its policy.  Failure to do so renders its use of the entitlement exclusion ambiguous and inapplicable here.

Finally, even if the court determines that the entitlement exclusion is unambiguous, concluding that the entitlement exclusion applies as a matter of law in this case would be inappropriate.  In both *Cornerstone* and *Allstate*, the court limited its interpretation of the entitlement exclusion to correspond with the exclusion's plain language (e.g., *Allstate* at 553-554 ("This provision means that, in order for there to be coverage, the trier of fact must find that the person using the vehicle believed that he was entitled to do so and that such belief was reasonable."))—the court did not read into the exclusion unwritten specific factual scenarios, which an ordinary parent like Kelley Lensing might reasonably have expected to be covered by the plain language of the policy she purchased. Further, it would

undermine the purpose of Rule 56 to conclude *as a matter of law* that L.L. could not hold a reasonable belief that he was entitled to use his friend's vehicle when that friend had just given him express permission to do so, notwithstanding Plaintiff's contentions about driver's licenses, alcohol consumption, and the route L.L. took. At most, whether the entitlement exclusion should bar coverage here is a disputed question of fact which an Arkansas jury should resolve.

**CONCLUSION**

Plaintiff's Motion for Summary Judgment should be denied. The entitlement exclusion contained in Kelley Lensing's auto policy is ambiguous and this Court should follow the majority rule and the policy in question should be interpreted strictly against Plaintiff, who drafted the policy, and in favor of coverage. Even if the entitlement exclusion is not ambiguous, L.L. could reasonably believe he was entitled to drive his friend's vehicle where his friend had just given him express permission to drive the vehicle. This court should not embrace a "Bright Line rule" or a "5 Factor rule" generating the conclusion that this exclusion applies *as a matter of law* in a case where the exclusion's interpretation/application is ambiguous and the insured had express permission to drive the vehicle.

Respectfully submitted,

DENTON & ZACHARY, PLLC
Andrew Payne Norwood, Ark. Bar No. 2017107
Joe A. Denton, Ark Bar No. 2012167
Justin C. Zachary, Ark. Bar No. 2010162
2100 Riverdale Road, Suite 200A
Little Rock, Arkansas 72202
Tel:     (501) 358-4999
Fax:     (501) 358-4737
Email:  andrew@dentonandzachary.com
         joe@dentonandzachary.com
         justin@dentonandzachary.com

**ATTORNEYS FOR
SEPARATE DEFENDANTS
TERESA STURCH & RUSTEY WILLIAMS**

**CERTIFICATE OF SERVICE**

I, Andrew Payne Norwood, hereby certify that on September 23, 2022, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which shall send notification of such filing upon all counsel of record via email.

Andrew Payne Norwood