IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**STATE AUTOMOBILE MUTUAL**
**INSURANCE COMPANY**                                              **PLAINTIFFS**

**v.**                              **Case No. 4:21-cv-01080-KGB**

**KELLEY LENSING,** *individually and as mother,*                  **DEFENDANTS**
*next friend and natural guardian of L.L., a minor,*
**JOSEPH LENSING,** *individually and as father,*
*next friend and natural guardian of L.L., a minor*,
**TERESA STURCH,** *individually and as mother,*
*next friend and natural guardian of S.W., a minor*
**RUSTEY WILLIAMS,** *individually and as father,*
*next friend and natural guardian of S.W., a minor*

## OPINION AND ORDER

Before the Court is a motion for summary judgment filed by separate defendants Teresa Sturch, individually and as mother, next friend, and natural guardian of S.W., a minor, and Rustey Williams, individually and as father, next friend, and natural guardian of S.W. (collectively "Sturch defendants") and a motion for summary judgment filed by plaintiff State Automobile Mutual Insurance Company ("State Auto") (Dkt. Nos. 16; 21). For the following reasons, the Court denies the Sturch defendants and State Auto's cross motions for summary judgment (Dkt. Nos. 16; 21).

### I.     Overview Of The Parties And Claims

State Auto filed this suit against Kelley Lensing, individually and as mother, next friend, and natural guardian of L.L., a minor; Joseph Lensing, individually and as father, next friend, and natural guardian of L.L., a minor (collectively "Lensing defendants"); and Sturch defendants under 28 U.S.C. § 1332, alleging complete diversity among the parties and an amount in controversy exceeding $75,000.00 (Dkt. No. 1, ¶¶ 1–4). Pursuant to 28 U.S.C. § 2201, State Auto requests that

the Court declare the rights of the parties under an insurance policy — AAR 0054397 ("AAR 0054397") — issued by State Auto to Ms. Lensing (*Id.*, ¶¶ 5; 10; 20).[1]  Specifically, State Auto seeks a declaratory judgment stating that AAR 0054397 provides no coverage to L.L. — Mr. and Ms. Lensing's minor child — for any claims arising out of an August 14, 2020, motor vehicle accident ("August 14, 2020, accident") in which L.L. allegedly crashed a Chevrolet Camaro ("Camaro") owned by Shane Rider and Tonya Rider, allegedly injuring S.W. — the daughter of Ms. Sturch and Mr. Williams (Dkt. Nos. 1, ¶¶ 8; 20; 16-5, ¶ 1).[2]  State Auto also requests that the Court declare that State Auto "is not obligated to defend any suit filed or settle any claim made by or on behalf of S.W. or any other person claiming damages as a result of the [August 14, 2020] [a]ccident" (Dkt. No. 1, ¶ 20).

## II.    Procedural Background

After State Auto filed the instant lawsuit on November 10, 2021 (Dkt. No. 1), non-party First Arkansas Bank & Trust, guardian of S.W.'s estate, filed suit in the Circuit Court of Cleburne County, Arkansas, *First Arkansas Bank And Trust v. Joseph Lensing et al.*, Case No. 12-cv-21-232, "seeking damages for injuries S.W. sustained in the accident allegedly due to the fault of L.L." (Dkt. No. 22, at 2).

Sturch defendants filed their motion for summary judgment on July 21, 2022 (Dkt. Nos. 16; 17; 18).  State Auto responded in opposition on August 26, 2022 (Dkt. Nos 24; 25).

---

[1]  The record before the Court indicates that defendants Mr. and Ms. Lensing divorced on August 6, 2015 (Dkt. No. 26-1, at 1; 26-2, at 14).  Ms. Lensing represents that she is now referred to as Kelley Sluder.  Although the Court acknowledges this, to prevent confusion and to refer to the parties as the case is styled, the Court refers to Ms. Sluder as Ms. Lensing throughout this Order.

[2]  Mr. and Mrs. Rider's son, Wyatt Rider, allegedly gave L.L. permission to drive Mr. and Mrs. Rider's Camaro (Dkt. No. 16-5, ¶¶ 1; 5).  Throughout this Order, the Court refers to Wyatt Rider as W. Rider.

State Auto filed its own motion for summary judgment on August 26, 2022, incorporating its response to Sturch defendants' motion for summary judgment (Dkt. Nos. 21, ¶¶ 1–2; 22–23). Ms. Lensing filed a response on September 2, 2022 (Dkt. No. 26). State Auto filed a reply to Ms. Lensing's response that same day (Dkt. No. 27). On September 23, 2022, Sturch defendants filed a response to State Auto's statement of undisputed facts and attached two exhibits to its response to State Auto's statement of undisputed facts (Dkt. Nos. 30–32). State Auto filed a reply to Sturch defendants' response to State Auto's statement of undisputed facts on September 29, 2022, and on October 24, 2022, Sturch defendants submitted a correction to the deposition testimony of W. Rider (Dkt. Nos. 34; 38; *see generally* Dkt. No. 35). The Court conducted a hearing on the cross motions for summary judgment on November 9, 2022 (Dkt. No. 40).

### III.     Factual Background

Unless otherwise cited, the Court recounts the facts from the parties' respective motions for summary judgment (Dkt. Nos. 16; 21), the parties' statements of undisputed material facts (Dkt. Nos. 18; 23), the parties' responses to the submitted statements of undisputed material facts (Dkt. Nos. 24; 30; 31; 32), and the parties' accompanying briefs, responses, and replies to the cross motions for summary judgment (Dkt. Nos. 17; 22; 25; 26; 27; 33; 34).[3]

### A.     Ms. Lensing's Insurance Policy AAR 0054397

State Auto issued AAR 0054397, a personal automobile insurance policy, to Ms. Lensing for the period of September 26, 2019, to September 26, 2020 (Dkt. Nos. 16-2, at 15; 18, ¶ 2; 24, ¶

---

[3] Ms. Lensing made only one filing related to Sturch defendants and State Auto's cross-motions for summary judgment (Dkt. No. 26). Specifically, Ms. Lensing filed a response to State Auto's motion for summary judgment. Mr. Lensing made no filings. Lensing defendants can no longer make filings related to Sturch defendants and State Auto's cross-motions for summary judgment, as the time for making additional filings has passed. Local Rule 7.2(b). The cross-motions for summary judgment are ripe for adjudication (Dkt. Nos. 16; 21).

2). AAR 0054397 covered a 2011 Hyundai Sonata and 2013 Jeep Wrangler (Dkt. No. 16-2, at 15).[4] AAR 0054397 provided Ms. Lensing with, among other benefits, per accident coverage for bodily injury, property damage, medical payments, work loss, accidental death, automobile damage, transportation expenses, and uninsured motorist (*Id.*).

AAR 0054397 defines several terms at the outset of the agreement. Specifically, the "DEFINITIONS" include the following:

A.  Throughout this policy, "you" and "your" refer to:

1.  The "named insured" shown in the Declarations; and

2.  The spouse if a resident of the same household.

If the spouse ceases to be a resident of the same household during the policy period or prior to the inception of this policy, the spouse will be considered "you" and "your" under this policy but only until the earlier of:
1.  The end of 90 days following the spouse's change of residency;
2.  The effective date of another policy listing the spouse as a named insured; or
3.  The end of the policy period.

B.  "We", "us" and "our" refer to the Company providing this insurance.

C.  For purposes of this policy, a private passenger type auto, pickup or van shall be deemed to be owned by a person if leased:
1.  Under a written agreement to that person; and
2.  For a continuous period of at least 6 months.

Other words and phrases are defined. They are in quotation marks when used.

D.  "Bodily injury" means bodily harm, sickness or disease, including death that results.

E.  "Business" includes trade, profession or occupation.

---

[4] A copy of AAR 0054397 is an exhibit to the complaint, which State Auto references in its motion for summary judgment. For consistency, when referring to policy AAR 0054397 in this Order, the Court refers to Dkt. No. 16-2.

F.    ***"Family member" means a person related to you by blood, marriage or adoption who is a resident of your household.***  This includes a ward or foster child.

G.    "Occupying" means:
1.    In;
2.    Upon; or
3.    Getting in, on, out or off.

H.    "Property damage" means physical injury to, destruction of or loss of use of tangible property.

I.    "Trailer" means a vehicle designed to be pulled by a:
1.    Private passenger auto; or
2.    Pickup or van
It also means a farm wagon or farm implement while towed by a vehicle listed in 1. or 2. above.

J.    "Your covered auto" means:
1.    Any vehicle shown in the Declarations.
2.    A "newly acquired auto".
3.    Any "trailer" you own.
4.    Any auto or "trailer" you do not own while used as a temporary substitute for any other vehicle described in this definition which is out of normal use because of its:
a.    Breakdown;
b.    Repair;
c.    Servicing;
d.    Loss; or
e.    Destruction.
This Provision (J.4.) does not apply to Coverage For Damage To Your Auto.

(*Id.*, at 24)(emphasis added).

AAR 0054397 also lists the terms of liability coverage in "PART A – LIABILITY COVERAGE" (*Id.*, at 25).  These terms are as follows:

**INSURING AGREEMENT**

A.    We will pay damages for "bodily injury" or "property damage" for which any "insured" becomes legally responsible because of an auto accident. Damages include prejudgment interest awarded against the "insured".  We will settle or defend, as we consider appropriate, any claim or suit asking for these damages.  In addition to our limit of liability, we will pay all

5

defense costs we incur.  Our duty to settle or defend ends when our limit of liability for this coverage has been exhausted by payment of judgments or settlements.  We have no duty to defend any suit or settle any claim for "bodily injury" or "property damage" not covered under this policy.

B.      "Insured" as used in this Part[5] means:

    1.      You or any "family member"  for the ownership, maintenance or use of any auto or "trailer"

    2.      Any person using "your covered auto".

    3.      For "your covered auto", any person or organization but only with respect to legal responsibility for acts or omissions of a person for whom coverage is afforded under this Part.

    4.      For any auto or "trailer", other than "your covered auto", any other person or organization but only with respect to legal responsibility for acts or omissions of you or any "family member" for whom coverage is afforded under this Part.  This Provision (B.4.) applies only if the person or organization does not own or hire the auto or "trailer".

(*Id.*, at 25).

AAR 0054397 also contains a series of circumstances – labeled "EXCLUSIONS" – under which State Auto does not provide liability coverage for any "insured" individual.  Relevant to this dispute, the exclusion at A.8 ("entitlement exclusion") states:

A.      We do not provide Liability Coverage for any "insured":

    . . .

    8.      Using a vehicle without a reasonable belief that that "insured" is entitled to do so.  This Exclusion (A.8.) does not apply to a "family member" using "your covered auto" which is owned by you.

(*Id.*, at 26).

---

    [5]  The Court understands "Part" in this context to refer to "PART A – LIABILITY COVERAGE" of AAR 0054397.

### B.     L.L. As A "Resident" Of Ms. Lensing's "Household"

L.L. is the minor child of Mr. and Ms. Lensing (Dkt. Nos. 18, ¶ 5; 24 ¶ 5; 26-2, at 1).  Mr. and Ms. Lensing divorced on August 6, 2015 (Dkt. No. 26-1, at 1; 26-2, at 14).  As part of Mr. and Ms. Lensing's Divorce Decree and Property Settlement Agreement ("Lensing Divorce Decree"), Ms. Lensing had "primary physical custody of [L.L.] . . . with [Mr. Lensing] having reasonable visitation." (Dkt. Nos. 18, ¶ 1; 26-2, at 2).  Ms. Lensing maintained a permanent residence in North Little Rock located in Pulaski County, Arkansas, and Mr. Lensing maintained a residence in Eden Isle, located in Cleburne County, Arkansas (Dkt. Nos. 16-2, at 1; 16-4, at 2 ¶ 25; 21-1, at 3 ¶¶ 5–8; 24, ¶ 5; 26-1, at 2).[6]

The parties dispute whether L.L. has been a "resident of" Ms. Lensing's household in Pulaski County, Arkansas, pursuant to the terms of AAR 0054397 (Dkt. Nos. 24, ¶ 6; 25, at 4; 26-1, at 2; *see also* Dkt. No. 21-1, at 3 ¶¶ 5–8; 38, at 5 ¶¶ 6–9).  Sturch defendants maintain that the Lensing Divorce Decree demonstrates that L.L. was a resident of Ms. Lensing's household for the purposes of AAR 0054397 (Dkt. No. 18, ¶¶ 1, 3, 4, 6).  Ms. Lensing maintains that L.L. "has continued to reside primarily with" Ms. Lensing since the Lensing Divorce Decree and attended school in Pulaski County, Arkansas (Dkt. No. 26-1, at 2).  Ms. Lensing also states that, on August 14, 2020, L.L. was visiting his father (Dkt. No. 26, ¶ 3).

State Auto disputes Sturch defendants' and Ms. Lensing's contentions related to L.L.'s residency.  State Auto maintains that Sturch defendants "have not shown that L.L. was a resident of Kelley Lensing's household," pointing to the fact that Sturch defendants' statement of undisputed facts and S.W.'s deposition testimony frequently refer to L.L.'s "residence" and

---

[6] The Court notes that Ms. Lensing's counsel represented at a hearing held on November 9, 2022, that the Eden Isle residence belongs to Mr. Lensing's parents who are L.L.'s grandparents, not Mr. Lensing.  The record evidence before the Court does not reflect this representation.

"house" as being the Eden Isle property (Dkt. No. 25, at 4).  State Auto maintains that "[l]egal custody and actual residence are not synonymous" (*Id.*).

### C.   August 14, 2020, Accident

#### 1.   L.L.'s Party And Alcohol Consumption

On August 13, 2020, L.L. hosted a party at Mr. Lensing's Eden Isle residence (Dkt. Nos. 16-4, at 2 ¶¶ 20–25; 17, at 2; 18, ¶ 9; 21-1, at 11 ¶¶ 19–25; 23, ¶ 12; 24, ¶ 9).[7]  W. Rider and S.W. attended L.L.'s party (Dkt. Nos. 16-4, at 2 ¶¶ 20–25; 23, ¶¶ 9–10; 32 at 4 ¶¶ 5–16; 21-1, at 11 ¶¶ 20–25; 23, ¶ 12).  Prior to the August 13, 2020, party, W. Rider and L.L. had only spent time together on August 5, August 6, and August 7, 2020 (Dkt. No. 23, ¶ 14).  W. Rider arrived at L.L.'s party around noon, driving a Camaro belonging to W. Rider's parents — Mr. and Mrs. Rider (Dkt. Nos. 18, ¶ 11; 21-1, at 11 ¶¶ 20–24; 23, ¶¶ 6, 12; 30, ¶¶ 6, 12).  Mr. and Mrs. Rider gave W. Rider permission to drive the Camaro to Mr. Lensing's Eden Isle residence on August 13, 2020 (Dkt. Nos. 23, ¶ 9; 30, ¶ 9).

The parties dispute the role alcohol played in these events.  Upon arriving at L.L.'s party, W. Rider observed L.L. playing a game of beer pong (Dkt. Nos. 23, ¶ 12; 30, ¶ 12; 38, at 6 ¶¶ 5–24).  The parties dispute how much beer was in the respective cups during this game of beer pong (Dkt. Nos. 23, ¶ 12; 30, ¶ 12).  State Auto represents that the cups were "filled with beer" (Dkt. No. 23, ¶ 12).  Sturch defendants deny  that the cups "were 'filled with beer', as this could indicate that the cups were filled to the top with beer" (Dkt. No. 30, ¶ 12).  When asked how full the cups of beer were, W. Rider testified, "I don't know" (Dkt. No. 38, at 7 ¶¶ 5–6).

---

[7]   The parties dispute whether L.L. invited certain guests or whether certain guests were invited by third parties (Dkt. Nos. 18, ¶ 9; 24, ¶ 9).  This fact is not outcome determinative based on the Court's analysis.

The parties also dispute how much beer L.L. consumed generally and by playing beer pong on August 13, 2020 (Dkt. Nos. 23, ¶¶ 3, 13; 30, ¶¶ 3, 13).  State Auto maintains that, before the August 14, 2020, accident, L.L. "had been drinking beer for at least twelve hours." (Dkt. No. 23, ¶ 3).  Further, State Auto, relying on W. Rider's testimony states that "[t]he game [of beer pong] is over when all ten cups of beer are empty.  Thus, the winner of the game has consumed ten cups of beer" (Dkt. No. 22, at 10).[8]

Sturch defendants argue that State Auto's characterization of L.L.'s drinking on August 13, 2020, "improperly leads this Court to think L.L. had been drinking for a continuous twelve hours . . . ." (Dkt. No. 30, ¶ 3).  W. Rider testified that he saw L.L. playing beer pong when he arrived at the party and that L.L. "probably played multiple games" lasting "maybe an hour-ish . . . ."  (Dkt. No. 38, at 6 ¶¶ 7–10, at 7 ¶¶ 19–20).  W. Rider testified that L.L. resumed playing beer pong at some point in the afternoon, after L.L. jumped into the Eden Isle swimming pool fully clothed, though W. Rider could not recall for how long L.L. played beer pong (Dkt. Nos. 23, ¶ 15; Dkt. No. 38, at 13 ¶¶ 5–16).  W. Rider also testified that he could not "smell" alcohol on L.L. before the August 14, 2020, accident and that L.L. "seemed fine" (Dkt. No. 38, at 18 ¶¶ 23–25, at 19 ¶¶ 1–3, at 21 ¶¶ 20–21).  Furthermore, when S.W. was asked "[h]ow many beers did you see [L.L.] drink," she answered:  "I'm not sure.  I only saw him drink three" (Dkt. No. 32, at 8, ¶¶ 15–16).

---

[8]  The Court takes judicial notice that the game of beer pong can be played in varying ways.  *See Kirchoff v. Abbey*, Case No. CIV.A. WMN-10-1532, 2011 WL 4711898, at *1 n. 2 (D. Md. Oct. 5, 2011) (observing that the "rules of beer pong may vary by location" and explaining that during a game of beer pong, "[o]pposing players stand at opposite ends of a table behind a grid of beer-filled cups.  Players from one team throw or bounce a ping-pong ball from their end of the table and try to land it in one of the cups arranged at the other end of the table.  If the ball lands in a cup, then a player on the opposing team has to remove that cup from the table and drink its contents").

### 2.     L.L. Seeking Permission And The Scope Of Permission To Drive The Camaro

Mr. and Mrs. Rider gave W. Rider permission to drive their Camaro to Mr. Lensing's Eden Isle home on August 13, 2020 (Dkt. Nos. ¶ 23, ¶ 9; 30, ¶ 9).  W. Rider testified that he "fe[lt] like [he] was responsible with the keys and the Camaro" on August 13, 2020 (Dkt. No. 38, at 10 ¶ 10–13).

The undisputed record evidence is that some form of permission was granted by W. Rider to L.L. to drive the Camaro, but the parties dispute the effect of the permission, the timing of the permission, and the scope of the permission.  Based on the record evidence, at some point in the afternoon, before L.L. resumed playing beer pong, while it was still daylight, L.L. asked W. Rider if he could drive Mr. and Mrs. Rider's Camaro (Dkt. No. 21-1, at 26 ¶¶ 8–25; 38 at 13, ¶¶ 1– 25).  W. Rider said yes, though L.L. did not drive the Camaro immediately upon receiving permission (Dkt. Nos. 23, ¶¶ 23–24; 30, ¶¶ 23–24).  Instead, L.L. resumed playing beer pong (Dkt. Nos. 23, ¶ 25; 30, ¶ 25).

The parties dispute whether L.L. asked W. Rider a second time for permission to drive the Camaro (Dkt. Nos. 18, ¶ 10; 23, ¶¶ 26, 29, 37–38; 24, ¶ 10; 30, ¶¶ 26, 29, 37–38).  State Auto claims that W. Rider "thought that once L.L. started drinking again and playing beer pong, L.L. would have asked [W. Rider] again for permission to drive the Camaro if he wanted to drive it" (Dkt. No. 23, ¶ 26).  Sturch defendants state in response that "L.L. asked to take the Camaro in question again in the early morning hours of August 14, 202[0], after L.L. had stopped playing beer pong," and that W. Rider "again stated L.L. could drive the Camaro on August 14, 202[0], to which [W.] Rider agreed" (Dkt. No. 30, ¶ 26).[9]

---

[9]  The Court understands these events to have occurred in 2020 and for the reference to 2021 in the filing to be a scrivener's error.

W. Rider testified — "I don't know" — when asked if L.L. asked him to drive the car after their initial interaction but stated that he knew "for a fact" L.L. asked permission earlier in the day (Dkt. No. 38, at 17 ¶¶ 4–11).  W. Rider also testified that he "figured" L.L. would ask permission again after initially asking and not driving the Camaro (Dkt. No. 38, at 14 ¶¶ 19–22).  S.W. also testified that she witnessed W. Rider give L.L. permission to drive the Camaro "after midnight" on August 14, 2020 (Dkt. No. 32, at 5 ¶¶ 23–25, at 7, ¶¶ 18– 22).

Even though the undisputed record evidence is that W. Rider gave L.L. permission to drive the Camaro at least once, the record evidence indicates the scope of that permission is in dispute (Dkt. Nos. 18, ¶¶ 13, 15; 23, ¶ 36; 24, ¶¶ 13, 15; 30; ¶ 36; 38, at 17 ¶¶ 4–11).  State Auto claims that W. Rider "told L.L. that he could drive around Eden Isle, but it would have had to be a whole other conversation if L.L. wanted to leave Eden Isle, and [W. Rider] would have wanted to be with L.L. in that event"; State Auto maintains that W. Rider "never gave L.L. permission to drive outside of Eden Isle." (Dkt. No. 23, ¶¶ 36, 39).  Sturch defendants disagree and argue that W. Rider "does not remember telling L[.] L[.] or the investigating officer that [W. Rider] didn't give L.L. permission to drive off Eden Isle . . . [W. Rider] remembers giving L.L. permission to drive on Eden Isle, but does not remember restriking L.L.'s driving of the Camaro only on Eden Isle." (Dkt. No. 30, ¶ 36 (internal citations omitted); *see also* Dkt. No. 30 ¶ 39).[10]

The undisputed record evidence is that W. Rider never gave L.L. the keys to the Camaro (Dkt. No. 23, ¶ 27).

---

[10]   The record before the Court indicates that "permission to drive on Eden Isle" means permission to drive around a circle driveway on the Eden Isle property (Dkt. No. 38, at 20, ¶¶ 20– 25).  "The speed limit on Eden Isle is 25 miles per hour with speed bumps so one cannot drive very fast . . . ." (Dkt. No. 23, ¶ 32).

### 3.     The Status Of L.L. As A Licensed Driver

As of August 14, 2020, L.L. was 15 years of age and held no driver's license (Dkt. Nos. 23, ¶ 1–2; 30, ¶¶ 1–2).  State Auto maintains that, as of August 14, 2020, L.L. held "no driver's license or permit." (Dkt. No. 23, ¶ 2).  Sturch defendants admit that, as of August 14, 2020, L.L. did not possess a driver's license (Dkt. No. 30, ¶ 2).  However, Sturch defendants deny that L.L. held no permit and argue that L.L.'s permit status "is unknown . . . because L.L.'s counsel has informed the parties L.L. will assert L.L.'s [Fifth] Amendment right to not answer questions related to the night in question if deposed" (*Id.*).

W. Rider "assumed L.L. was sixteen years old but never asked [L.L.] his age and did not know that L.L. was fifteen years old," though W. Rider testified that he "would have allowed L. L. to drive the Camaro . . . even if W[.] Rider [had] kn[own] L.L. was not old enough to drive at the time of the wreck." (Dkt. Nos. 23, ¶ 11; 30, ¶ 11; *see also* 38, at 9 ¶¶ 2–11).

### 4.     The August 14, 2020, Accident

According to State Auto, before L.L. drove the Camaro, W. Rider saw L.L. sitting in the Camaro with the engine turned off (Dkt. No. 23, ¶ 28).  Relying on S.W.'s deposition testimony, Sturch defendants maintain that, after W. Rider saw L.L. sitting in the car with the engine turned on, W. Rider "helped L.L. connect L.L.'s phone to the Camaro . . . ." (Dkt. Nos. 18, ¶ 14; 30, ¶ 28).  Specifically, S.W. testified that, after W. Rider and L.L. "got done talking, [L.L.] needed help trying to figure out how to connect his phone to the car" (Dkt. No. 32, at 6, ¶¶ 18–20).

L.L. later drove the Camaro outside of Eden Isle with multiple passengers in the Camaro (Dkt. No. 16-4, at 6 ¶¶ 2–9).  While driving the Camaro, L.L. sped up after another passenger asked him to slow down (Dkt. No. 18, ¶ 17).  Within 15 to 20 minutes of leaving Mr. Lensing's home, L.L. lost control of the Camaro, left the roadway, and rolled into a tree line on Big Dike

Road near Heber Spring, Arkansas (Dkt. Nos. 16-4, at 6 ¶ 6; 18, ¶ 18; 23 ¶ 31; 24, ¶ 20; 30 ¶ 31).

L.L. fled the scene at some point after the wreck, and the Cleburne County Sheriff's Office found

S.W. at the scene of the accident with a "severely broken leg" (Dkt. No. 18, ¶ 19).

## IV.    Standard Of Review

### A.    Summary Judgment

"When faced with cross-motions [for summary judgment], the normal course for the trial

court is to 'consider each motion separately, drawing inferences against each movant in turn.'"

*Wright v. Keokuk Cnty. Health Ctr.*, 399 F. Supp. 2d 938, 946 (S.D. Iowa 2005) (citing *EEOC v.*

*Steamship Clerks Union, Local 1066*, 48 F.3d 594, 603 n. 8 (1st Cir.1995)).

Summary judgment is proper if there is no genuine issue of material fact for trial.

*UnitedHealth Group Inc. v. Executive Risk Specialty Ins. Co.*, 870 F.3d 856, 861 (8th Cir. 2017)

(citing Fed. R. Civ. P. 56).  A court should grant summary judgment when the facts, viewed in the

light most favorable to the nonmoving party, show that there is no genuine issue of material fact

and that the defendant is entitled to entry of judgment as a matter of law.  *Celotex Corp. v. Catrett*,

477 U.S. 317, 322 (1986).  "Where the record taken as a whole could not lead a rational trier of

fact to find for the non-moving party, there is no genuine issue for trial."  *Johnson Regional*

*Medical Ctr. v. Halterman*, 867 F.3d 1013, 1016 (8th Cir. 2017) (quoting *Matsushita Elec. Indus.*

*Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  A factual dispute is genuine if the evidence

could cause a reasonable fact finder to return a verdict for either party.  *Miner v. Local 373*, 513

F.3d 854, 860 (8th Cir. 2008).  "The mere existence of a factual dispute is insufficient alone to bar

summary judgment; rather, the dispute must be outcome determinative under the prevailing law."

*Holloway v. Pigman*, 884 F.2d 365, 366 (8th Cir. 1989).

However, parties opposing a summary judgment motion may not rest merely upon the allegations in their pleadings. *Buford v. Tremayne*, 747 F.2d 445, 447 (8th Cir. 1984). The initial burden is on the moving party to demonstrate the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323. The burden then shifts to the nonmoving party to establish that there is a genuine issue to be determined at trial. *Prudential Ins. Co. v. Hinkel*, 121 F.3d 364, 366 (8th Cir. 2008), *cert. denied*, 522 U.S. 1048 (1998). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

### B.    Declaratory Judgment

State Auto filed the instant lawsuit requesting a declaratory judgment: (1) asserting that AAR 0054397 provides no coverage to L.L for any claims arising out of the August 14, 2020, accident and (2) declaring that State Auto is not required to defend any action resulting from the August 14, 2020, accident (Dkt. No. 1, ¶¶ 8; 20). For this reason, the Court recounts the standard of review related to the Declaratory Judgment Act.

The Declaratory Judgment Act provides that, "[i]n a case of actual controversy within its jurisdiction," subject to some exceptions not at issue here, "any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).

"There is no clear-cut standard to use in determining whether a court should exercise its discretion to grant declaratory relief." *Bd. of Regents for Nw. Mo. St. Univ. v. MSE Corp.*, Case No. 90-0125-cv-W-9, 1990 WL 212098, at *2 (W.D. Mo. Nov. 20, 1990). The question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial

controversy between parties having adverse legal interests of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.  *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941).  In general, courts should exercise their discretion in such a way as "to strike a proper balance between the needs of the plaintiff and the consequences of giving the desired relief . . . .  The actuality of the plaintiff's need for a declaration of his rights is therefore of decisive importance."  *Eccles v. People's Bank of Lakewood Village, Cal.*, 333 U.S. 426, 431–32 (1948).

### V.      Sturch Defendants And State Auto's Cross Motions For Summary Judgment

A federal district court sitting in diversity applies its forum state's substantive law.  *Guardian Fiberglass, Inc. v. Whit Davis Lumber Co.*, 509 F.3d 512, 515 (8th Cir. 2007).  State law governs the interpretation of insurance policies when federal jurisdiction is based on diversity of citizenship.  *Secura Ins. v. Horizon Plumbing, Inc.*, 670 F.3d 857, 861 (8th Cir. 2012) (citing *Langley v. Allstate Ins. Co.,* 995 F.2d 841, 844 (8th Cir.1993)).

In Arkansas, the duty to defend under an insurance policy arises when there is a possibility that the injury or damage may fall within the policy coverage.  *Scottsdale Ins. Co. v. Morrowland Valley Co., LLC.*, 411 S.W.3d 184, 190–91 (Ark. 2012); *Cornerstone Nat'l Ins. Co. v. Rodriguez*, Case No. 5:20-cv-05064, 2021 WL 141699, at *3 (W.D. Ark. Jan. 14, 2021).  Generally, the "pleadings against the insured determine the insurer's duty to defend."  *Scottsdale*, 441 S.W.3d at 190–91.  To determine if a duty to defend arises, the "language in the contract from which the purported duty arises" is examined.  *Id.*

"The provisions of an insurance contract 'are to be interpreted by the court in the plain and ordinary meaning of the terms and cannot be construed to contain a different meaning.'"  *Unigard Sec. Ins. Co. v. Murphy Oil USA, Inc.*, 962 S.W.2d 735, 739–40 (Ark. 1998) (quoting *Horn v. Imperial Cas. & Indem. Co.*, 636 S.W.2d 302, 303 (Ark. 1982)).  Under Arkansas law, if the

language in an insurance policy is ambiguous, then the Court must construe the language strictly against the insurance company and resolve all doubts in favor of the insured. *Southern Title Ins. v. Oller*, 595 S.W.2d 681, 683 (Ark. 1980). However, "[t]he terms of an insurance contract are not to be rewritten under the rule of strict construction against the company issuing it so as to bind the insurer to a risk which is plainly excluded and for which it was not paid." *Id.* at 750 (quoting *S. Farm Bureau Cas. Ins. Co. v. Williams*, 543 S.W.2d 467, 470 (Ark. 1976)).

After it is determined that coverage exists, it must then be determined if exclusionary language within the policy eliminates the coverage. *See Castaneda v. Progressive Classic Ins. Co.*, 166 S.W.3d 556, 560-61 (Ark. 2004) (citing *Norris v. State Farm Fire & Cas. Co.*, 16 S.W. 3d 242 (Ark. 2000)). Exclusions must be expressed in clear and unambiguous language. *See id.*

If language is unambiguous, the plain language of the policy will be used. *Id.* (citing *Elam v. First Unum Life Ins. Co.*, 57 S.W.3d 165 (2001)). An insurance policy is ambiguous if "there is doubt and uncertainty as to its meaning and it is fairly susceptible of two or more interpretations." *Nationwide Mut. Ins. Co. v. Worthey*, 861 S.W.2d 307, 310 (Ark. 1993). "Although the meaning of an ambiguity may become a question for the fact-finder if parol evidence has been admitted to resolve that ambiguity, . . . where the meaning of the language of a written contract does not depend on disputed extrinsic evidence, the construction and legal effect of the contract are questions of law." *Smith v. Prudential Prop. & Cas. Ins. Co.*, 10 S.W.3d 846, 850 (Ark. 2000). When language is ambiguous, the policy will be construed "liberally in favor of the insured and strictly against the insurer." *Castaneda*, 166 S.W.3d at 560–61.

Further, if the language of a policy is unambiguous, then the Court need not resort to rules of construction in order to ascertain the meaning of the insurance policy. The Court must apply the plain and ordinary meaning of terms in the policy. *Williams*, 543 S.W.2d at 469. "[W]hen

policy language is clear and unambiguous, the court should decide, as a matter of law, the construction." *Nat. Life & Accident Ins. Co. v. Abbott*, 455 S.W.2d 120 (Ark. 1970).

Because of the overlapping nature of the parties' cross-motions for summary judgment, the Court examines each motion in turn, mindful of the separate inferences to be drawn in favor of each movant.

### A.   Sturch Defendants' Motion For Summary Judgment

Sturch defendants move for summary judgment arguing that they are entitled to judgment as a matter law because: (1) the plain language of AAR 0054397 "conclusively provides coverage to L.L. as an 'insured'. . ." and (2) no applicable exclusion to AAR 0054397 would prevent coverage given the facts leading to the August 14, 2020, accident (Dkt. No. 16; 17, at 4–5). Sturch defendants argue that AAR 0054397 by its terms does not exclude coverage, even if L.L. lacked a driver's license or learner's permit and even if L.L. was under the influence of alcohol at the time of the August 14, 2020, accident (Dkt. No. 17, at 7–9).

#### 1.   L.L. As An "Insured" Under AAR 0054397

Sturch defendants argue that AAR 0054397 provides L.L. coverage for the August 14, 2020, accident because there is no genuine factual dispute that L.L. was an "insured" within the meaning of AAR 0054397, by virtue of his status as a "family member" of Ms. Lensing during the applicable coverage period (Dkt. Nos. 16-2, at 24–25; 17, at 5; 18, ¶¶ 1–6).

AAR 0054397 provides that State Auto "will pay damages for 'bodily injury' or 'property damage' for which any 'insured' becomes legally responsible because of an auto accident[,]" and that State Auto would "settle or defend . . . any claim or suit asking for these damages" (Dkt. No. 16-2, at 25). However, AAR 0054397 limits the scope of State Auto's duty to pay, settle, and defend to exclude claims over the "limit of liability" and any suit or settlement "not covered under"

AR 0054397 (*Id.*).  AAR 0054397 defines the term "insured" to include a person who is a "family member," of the "named insured" during the time period in which the policy was in effect (*Id.*, at 24–25).  Per AAR 0054397, "Family member" is "a person related to you by blood, marriage or adoption who is a resident of your household" (*Id.*, at 24).  AAR 0054397 does not define the term "resident" or "household." (*See generally* Dkt. No. 16-2).

The term "insured" and "family member" are unambiguous in AAR 0054397.  *See generally Worthey*, 861 S.W.2d at 310; *see also Elam,* 57 S.W.3d at 169 (explaining that if the policy's language is unambiguous, the plain language controls and that policy language is ambiguous "if there is doubt or uncertainty as to its meaning and it is fairly susceptible to more than one reasonable interpretation.").  To qualify as an "insured" under AAR 0054397, the person in question must be a "family member" of the "'named insured' shown in the Declarations (*Id.*, at 24–25).  AAR 0054397 defines "family member" as:  "a person related to you by blood, marriage or adoption who is a resident of your household" (*Id.*, at 25).[11]  Given that "insured" and "family member" are defined and unambiguous, and that the parties do not dispute that L.L. is Ms. Lensing's blood relative, the Court looks to the "plain and ordinary meaning of terms in the policy" to determine the meaning of "resident" and "household" to assess if the parties dispute facts that bear on whether L.L. is a "resident" of Ms. Lensing's "household" (Dkt. No. 18, ¶ 5; 24, ¶ 5; 26-2, at 2).  *See generally Williams*, 543 S.W.2d at 469.

The record evidence before the Court, viewed in the light most favorable to the non-moving party, State Auto, creates a genuine issue of material fact as to whether L.L. is a "resident" of Ms. Lensing's "household."  Sturch defendants and Ms. Lensing maintain that L.L. resides primarily

---

[11]  According to the terms of AAR 0054397 "your" means "the 'named insured' shown in the declarations" (Dkt. No. 16-2, at 24).

with Ms. Lensing in Pulaski County, Arkansas, pointing to the Lensing Divorce Decree and Ms. Lensing's Affidavit as proof (Dkt. Nos. 16-1; 18, ¶¶ 1; 3, 4, 6; 26-1, at 2).  State Auto disagrees, pointing to Sturch defendants' statement of undisputed facts and S.W.'s deposition testimony describing the Eden Isle property as L.L.'s "residence" and "house," to argue that this record evidence creates questions of fact "that would require a trial to resolve" (Dkt. No. 25, at 4).  State Auto also notes that "[l]egal custody and actual residence are not synonymous" (*Id.*).

The Court's role at this stage of the litigation is not to weigh the record evidence or to make determinations related to the credibility of any witness or affiant.  *See Great Plains Real Estate Dev., L.L.C. v. Union Cent. Life Ins. Co.*, 536 F.3d 939, 944 (8th Cir. 2008) (quoting *Morris v. City of Chillicothe*, 512 F.3d 1013, 1018 (8th Cir. 2008)).  Rather, the Court's role is to examine the record evidence in the light most favorable to the non-moving party, draw all reasonable inferences in favor of the non-moving party, and determine if there are genuine disputes of outcome determinative facts.  *Celotex Corp.*, 477 U.S. at 323.

Having reviewed all record evidence before it and having examined that record evidence in the light most favorable to the non-moving party, State Auto, the Court finds disputed facts in the record that are outcome determinative of L.L.'s status as an "insured" by virtue of being Ms. Lensing's "family member" under the terms of AAR 0054397.  For these reasons, the Court denies Sturch defendants' motion for summary judgment.

### 2.    Applicable Exclusion

Sturch defendants also seek summary judgment on the basis that AAR 0054397 lacks an applicable exclusion as applied to L.L. for the August 14, 2020, accident (Dkt. No. 17, at 5–7).  Sturch defendants maintain that AAR 0054397 by its terms does not exclude coverage, even if

L.L. lacked a driver's license or learner's permit and even if L.L. was under the influence of alcohol at the time of the August 14, 2020, accident (Dkt. No. 17, at 7–9).

For the Court to grant Sturch defendants' motion for summary judgment on this issue, Sturch defendants must:  (1) show that there are no disputed facts related to L.L.'s status as an "insured" under AR 0054397 and (2) demonstrate based on undisputed facts and policy language that no applicable exclusion exists for the circumstances surrounding the August 14, 2020, accident.  Because the Court determines that there are disputed facts in the record evidence that are outcome determinative of L.L.'s status as an "insured" by virtue of being Ms. Lensing's "family member" under the terms of AAR 0054397, the Court does not address Sturch defendants' other bases for summary judgment.

For all of these reasons, the Court denies Sturch defendants' motion for summary judgment (Dkt. No. 16).

### B.     State Auto's Motion For Summary Judgment

State Auto filed its motion for summary judgment on August 26, 2022, arguing that, even if this Court assumes without deciding that AAR 0054397 covered L.L. as a "resident" of Ms. Lensing's "household," the entitlement exclusion found at § A.8 of AAR 0054397 bars coverage for any damages flowing from the August 14, 2020, accident (Dkt. Nos. 21; 22, at 3).  State Auto maintains that L.L. did not drive the Camaro on August 14, 2020, with the "reasonable belief" that he was entitled to do so, providing State Auto justification for denying coverage under the entitlement exclusion (Dkt. No. 22, at 3).

State Auto first contends that the entitlement exclusion found at § A.8 of AAR 0054397 is unambiguous (Dkt. No. 22, at 5).  Next, State Auto urges the Court to adopt a bright-line rule holding that as a matter of law an unlicensed person or someone who is otherwise driving illegally

"can *never* have a reasonable belief that he or she is entitled to operate a motor vehicle, regardless of any permission that may or may not have been given" (Dkt. No. 22, at 5–8).  Should the Court decline to adopt this bright-line rule, State Auto urges the Court to apply a five-factor rule for determining if a driver's belief that he is entitled to use a vehicle is reasonable (*Id.*, at 8–12).

Sturch defendants disagree and argue that AAR 0054397's entitlement exclusion "is ambiguous," which would entitle L.L. to insurance.  Sturch defendants assert that the Court must construe ambiguous language "liberally in favor of the insured and strictly against the insurer" (Dkt. No. 33, at 4).  *Castaneda*, 166 S.W.3d at 561.

To analyze State Auto's motion for summary judgment, as State Auto did in its brief in support of its motion for summary judgment, the Court assumes *arguendo*, for purposes of resolving this motion only, that L.L. is an "insured" (Dkt. No. 22, at 2).

## 1.    Ambiguity And AAR 0054397's Entitlement Exclusion

The Court begins its analysis of State Auto's motion for summary judgement by examining whether AAR 0054397's entitlement exception is ambiguous, as "[t]he law regarding construction of an insurance contract is well settled."  *Buddy Bean Lumber Co. v. Axis Surplus Ins. Co.*, 715 F.3d 695, 697 (8th Cir. 2013) (citing *Elam,* 57 S.W.3d at 169).  Insurance contract ambiguity is a question of law.  *Id.* at 698.  When a Court finds an insurance contract "unambiguous, the plain language controls."  *Id.* at 698 (internal quotations omitted).  If the policy language is fairly susceptible to more than one reasonable interpretation, it is ambiguous and must be construed liberally in favor of the insured and strictly against the insurer.  *Id.* (internal quotations omitted).

### a.    The Entitlement Exclusion Is Not Ambiguous

Neither the parties nor the Court found controlling Arkansas precedent directly addressing whether the entitlement exclusion at issue in AAR 0054397 is ambiguous as a matter of law (Dkt.

No. 22, at 3; *see generally* Dkt. No. 33).  When this Court sits in diversity, it is obligated to apply governing precedent from the Arkansas Supreme Court.  *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938); *see, e.g., Robinson v. MFA Mut. Ins. Co.,* 629 F.2d 497, 500–02 (8th Cir.1980) (applying the *Erie* Doctrine and adhering to an Arkansas Supreme Court case when the court's jurisdiction is based on diversity).  When this Court faces a novel question where no applicable state precedent exists, the Court must predict how the state supreme court would rule if faced with the same issue.  *Blankenship v. USA Truck, Inc.*, 601 F.3d 852, 856 (8th Cir. 2010) (citing *Northland Cas. Co. v. Meeks,* 540 F.3d 869, 874 (8th Cir. 2008) (quoting *Cotton v. Commodore Express, Inc.,* 459 F.3d 862, 864 (8th Cir.2006))).  "In other words, [the Court] must make an 'Erie-educated guess' when the law of the forum state is not crystal clear."  *Blankenship*, 601 F.3d at 856.

In making this *Erie*-educated guess, the parties urge the Court to take two divergent paths. State Auto urges the Court to find AAR 0054397's entitlement exclusion unambiguous and adopt one of two legal tests for determining if an unlicensed person or someone driving illegally can have a reasonable belief that he or she is entitled to operate a motor vehicle.  On the other hand, Sturch defendants urge the Court to find AAR 0054397's entitlement exclusion ambiguous and construe the language against State Auto (Dkt. No. 33, at 9).  As the parties acknowledge, there is a split in the authorities.  Some authorities, including other district courts in Arkansas, hold that entitlement exclusions are unambiguous, while other authorities conclude that entitlement exclusions are ambiguous.

Federal district courts in Arkansas have construed the entitlement exclusion as unambiguous, concluding that the language of an entitlement exclusion like that at issue in this case "means that, in order for there to be coverage, the trier of fact must find that the person using

the vehicle believed that he was entitled to do so and that such belief was reasonable." *Allstate Ins. Co. v. U.S. Fid. & Guar. Co.*, 663 F. Supp. 548, 552–54 (W.D. Ark. 1987), *aff'd sub nom. U.S. Fid. & Guar. Co. v. Cumpton*, 846 F.2d 1147 (8th Cir. 1988) (concluding "that the words 'using a vehicle without a reasonable belief that the person is entitled to do so' have a plain and unambiguous meaning.  This provision means that, in order for there to be coverage, the trier of fact must find that the person using the vehicle believed that he was entitled to do so and that such belief was reasonable."); *see also Cornerstone Nat'l Ins. Co. v. Rodriguez*, Case No. 5:20-CV-05064, 2021 WL 141699, at *3 (W.D. Ark. Jan. 14, 2021) (analyzing an entitlement exclusion similar to the one at issue here and noting *in dicta* that "[n]either party argues the exclusion is ambiguous, and the Court agrees.").

This Court acknowledges that, in making its *Erie*-educated guess, the court in *Allstate* observed that other state courts have extended coverage after finding ambiguous the "plain language" of similarly worded entitlement exclusions.  *Allstate*, 663 F.Supp. at 553–54 (citing *Canadian Indemnity Co. v. Heflin*, 727 P.2d 35 (Ariz. 1986); *State Automobile Mutual Insurance Co. v. Ellis*, 700 S.W.3d 801 (Ky. App. 1985)).   The *Allstate* court went on to distinguish those cases on their facts, reasoning:

> In each of these cases, the driver operating the insured vehicle at the time of the accident was under age and, under the law of the state of his residence, was not permitted to drive.  The insurance carriers contended that, irrespective of what the driver's state of mind may have been in relation to whether he had the permission of the owner of the vehicle to drive it, coverage is still excluded because he was not "entitled" to drive under state law.  These two state courts, in effect, held that if the insurance carriers intended the clause to so provide, they should have said so.  Both courts held that there was coverage.

*Allstate*, 663 F. Supp. at 553–54.  The Court acknowledges that the facts of *Allstate* — in which a licensed, possibly inebriated college student, using an acquaintance's vehicle without permission

and causing a wreck — differ from those this Court faces in the instant case.  663 F. Supp. at 549–52.

Having examined these authorities and many other non-controlling authorities that have construed the "plain language" of this entitlement exclusion or similar exclusionary language in other insurance policies, the Court concludes that the Arkansas Supreme Court would find the entitlement exclusion at issue here unambiguous.  Furthermore, in making its *Erie*-educated guess, the Court concludes that if the Arkansas Supreme Court were to address the facts and legal issues presented in this case, it would adopt the test laid out in *Allstate*, 663 F. Supp. at 553.  *See generally Blankenship*, 601 F.3d at 856.  The *Allstate* test requires a trier of fact to find that the person using the vehicle believed that he was entitled to do so and that such belief was reasonable.

AAR 0054397's entitlement exclusion states that State Auto does not provide "Liability Coverage for any 'insured' . . .  [u]sing a vehicle without a reasonable belief that that 'insured' is entitled to do so" (Dkt. 16-2, at 26).  AAR 0054397's entitlement exclusion applies across fact patterns and unambiguously "means that, in order for there to be coverage, the trier of fact must find that the person using the vehicle believed that he was entitled to do so and that such belief was reasonable."  *Allstate*, 663 F. Supp. at 553.

In coming to the conclusion that the analytical approach announced in *Allstate* would be the approach most likely adopted by the Arkansas Supreme Court, this Court acknowledges, as explained in this Order, that deeming the entitlement exclusion unambiguous does not necessarily resolve how this Court will apply that determination.  Further, in coming to the conclusion that the analytical approach announced in *Allstate* would be the approach most likely adopted by the Arkansas Supreme Court, the Court makes three additional observations.

First, the Court rejects the bright-line rule that State Auto urges it to adopt which would require the Court to hold that an unlicensed driver can never have the reasonable belief that he or she is entitled to operate a vehicle (Dkt. No. 22, at 5).  The Court acknowledges that various courts have resolved this issue various ways.  *See Haulers Insurance Co. v. Pounds*, 272 S.W.3d 902 (Mo. Ct. App. 2008) (reversing trial court's grant of summary judgment in case involving substantially similar insurance policy exclusion and concluding that fact that driver was 15 years old, unlicensed, and unable to drive legally any automobile on the public roadways was not sufficient as a matter of law to make unreasonable any subjective belief driver may have had that she was entitled to drive car) *but see Progressive N. Ins. Co. v. Concord Gen. Mut. Ins. Co.*, 864 A.2d 368, 373 (N.H. 2005) (affirming trial court's grant of summary judgment in case involving substantially similar insurance policy exclusion and concluding that exclusion was not ambiguous and that the driver "could not as a matter of law have had a reasonable belief that he was entitled to drive the car when he knew he did not have a valid driver's license, despite any permission extended to him by his girlfriend.").

Second, the Court considers that those courts that determine the word "entitled" is ambiguous may not have identified actual ambiguity in the exclusion language but instead identified the varying outcomes that a fact finder might deem reasonable when weighing whether the belief of entitlement was reasonable under the circumstances.  The Court examines the Georgia Supreme Court's decision in *Hurst v. Grange Mut. Cas. Co.*, 470 S.E.2d 659, 663 (Ga. 1996), with respect to this issue.  The Georgia Supreme Court, in overturning *Nationwide Mut. Ins. Co. v. Southern Trust Ins. Co., et al.*, 330 S.E. 443 (Ga. App. 1985), a case central to several of the case holdings deeming entitlement exclusions unambiguous, held that, when an insurance contract does not contain a definition of the word "entitled," there are multiple reasonable interpretations of

"entitled."  The *Hurst* case involved a wreck where a driver had the owner's permission to drive but drove with a suspended license, and the *Hurst* court determined that the word "entitled" in the owner's insurance policy's entitlement exclusion was ambiguous because it could be reasonably construed to have three different meanings.  470 S.E.2d at 663.  Specifically, the Georgia Supreme Court opined that "entitled" could mean:  (1) the driver must have been legally authorized to drive, (2) the driver must have had permission to drive from the owner or apparent owner of the vehicle, or (3) the driver must have had both legal authority and permission.  *Id.*

This Court concludes that the three potential definitions of "entitled" highlighted by the Georgia Supreme Court do not demonstrate ambiguity.  Instead, they demonstrate the varying outcomes that a fact finder might deem reasonable when weighing varying factual circumstances to determine whether an insured's belief that he was "entitled" to drive a vehicle was "reasonable" under the circumstances.

Third, the Court notes that, even in jurisdictions that deem entitlement exclusions ambiguous, those jurisdictions vary in how they construe the ambiguous language strictly against the insurance company and resolve all doubts in favor of the insured.  *See, e.g., State Farm Mut. Auto. Ins. Co. v. Wilson*, 54 F. Appx. 607, 608–10 (6th Cir. 2002) (unpublished) (finding ambiguity, reversing trial court, and directing that judgment be entered for insured); *Cooper v. State Farm Mut. Auto. Ins. Co.*, 849 F.2d 496, 499 (11th Cir. 1988) (finding ambiguity and holding that "whether the person had a legal right to drive may be one factor bearing on whether that person reasonably believed that he was entitled to use the automobile," reserving that determination for a jury); *Canadian Indemnity Co. v. Heflin,* 727 P.2d 35, 37 (Ariz. Ct. App.1986) (holding an entitlement exception "[i]nsufficient to fairly communicate to the insured the coverage limitation" that would bar an unlicensed,  underage, and speeding person from forming a reasonable belief

that he was entitled to use a vehicle and concluding policy exclusion did not apply); *Farm and City Ins. Co. v. Gilmore*, 539 N.W.2d 154, 157 (Iowa 1995) (finding ambiguity, construing the exclusion strictly against the insurer, and determining the record evidence supported finding the driver who was unlicensed, underage, had previous driving convictions, and had consumed four bottles of beer but who was driving with permission had a reasonable belief that he was entitled to use the vehicle); *State Farm Mutual Automobile Insurance Co. v. Moore,* 544 A.2d 1017, 1018 (Pa. Super. Ct. 1988) (finding ambiguous an entitlement exclusion after the insurance company argued that the provision required the vehicle's owner, not the vehicle's possessor, to provide permission for a party to drive the car and concluding that finding was sufficient to void the exclusion); *Aetna Casualty & Surety Co. v. Nationwide Mut. Ins. Co.,* 392 S.E.2d 377, 380 (N.C. 1990) (same as *Cooper*, 849 F.2d at 499); *Safeco Insurance Co. v. Davis,* 721 P.2d 550, 551–53 (Wash. Ct. App. 1986) (finding an entitlement exclusion ambiguous and declining to apply the exclusion to a 14-year-old girl who was given permission to drive a car by an acquaintance who regularly drove his parents' car to school).

The Court points out these varying approaches and recognizes that, even if the Court were to find AAR 0054397's entitlement exclusion ambiguous, the approach taken by certain courts such as the *Cooper* court would leave the parties with the same result despite a finding of ambiguity — a jury weighing L.L.'s legal right to drive as "one factor bearing on whether" L.L. "reasonably believed that he was entitled to use [the Camaro]."  849 F.2d at 499.

### b.    Result Of Unambiguous Language

Moreover, this Court acknowledges that even courts that deem the entitlement exclusion unambiguous do not apply that determination in the same way to resolve coverage disputes.  *See Blount v. Kennard*, 612 N.E.2d 1268, 1270 (Ohio App. Ct. 1992) (analyzing an entitlement

exclusion with similar language to the one at issue here and concluding that "[i]n determining whether [a driver] had a 'reasonable belief' under the policy language in this case, the trial court had to consider subjective and objective factors . . . ."), *but see Fisher v. U.S. Fid. & Guar. Co.*, 586 A.2d 783, 791 (Md. Ct. Spec. App. 1991) (concluding that the entitlement exclusion is unambiguous and explaining that in determining whether a driver believed he was entitled to drive the vehicle in question "it is irrelevant whether the driver of the vehicle was actually 'entitled' to drive because he had permission, consent, a license, a learner's permit, an ownership interest in the vehicle or some other color of authority.  What is relevant, is whether the driver *believed* he was entitled to drive").

Several courts that have determined the exclusion language is not ambiguous have then applied the legal test announced in *General Accident Fire & Life Assurance Corporation v. Perry*, 541 A.2d 1340, 1349 (Md. App. Ct. 1988).  The *Perry* test holds that the entitlement exclusion is not ambiguous when:  (1) a driver believes he is entitled to use the vehicle in question and (2) that belief was reasonable.   The *Perry* test lays out the following five factors for analyzing the reasonable belief prong:  (1) whether the driver had express permission to use the vehicle; (2) whether the driver's use of the vehicle exceeded the permission granted; (3) whether the driver was "legally" entitled to drive under the laws of the applicable state; (4) whether the driver had any ownership or possessory right to the vehicle; and (5) whether there was some form of relationship between the driver and the insured, or one authorized to act on behalf of the insured, that would have caused the driver to believe that he was entitled to drive the vehicle.

Even courts that apply the *Perry* test to unambiguous exclusionary language reach differing results.  *See, e.g., Smith v. Cincinnati Ins. Co.*, 790 N.E.2d 460, 461 (Ind. 2003); *Broz v. Winland*, 629 N.E.2d 395, 398 (Ohio 1994); *Mroz v. Indiana Insurance Co.*, 796 N.E.2d 830, 833 (Ind. Ct.

App. 2003); *Omaha Propery & Casualty Insurance Co. v. Peterson*, 865 S.W.2d 789, 791 (Mo. Ct. App. 1993).

The entitlement exclusion at § A.8 of AAR 0054397 provides that State Auto will not provide liability coverage for any "insured" when that "insured" uses a "vehicle without a reasonable belief that that 'insured' is entitled to do so" (Dkt. No 16-2 at 26).  Having studied the authorities cited by the parties and other non-controlling authorities, the Court concludes that this entitlement exclusion language is not ambiguous.  *See Allstate*, 663 F. Supp. at 553, *aff'd sub nom. Cumpton*, 846 F.2d at 1147.  Driving a "vehicle without a reasonable belief that that 'insured' is entitled to do so," "means that, in order for there to be coverage, the trier of fact must find that the person using the vehicle believed that he was entitled to do so and that such belief was reasonable" (Dkt. No 16-2 at 26).  *See Allstate*, 663 F. Supp. at 553.  Further, the Court finds instructive the five factor test from *Perry* when making this determination.  *Perry*, 541 A.2d at 1350.

### 2.    Applying The Entitlement Exclusion To L.L.

The Court's duty at the summary judgment stage is to determine if there is any dispute of material fact as to whether L.L. drove the Camaro with the "reasonable belief that . . . [he was] entitled to do so" (Dkt. No 16-2 at 26).  *See generally Miner*, 513 F.3d at 860.  The Court makes that determination by applying the test laid out in *Allstate*, 663 F. Supp. at 553.  The Court will grant State Auto's motion for summary judgment if there is no outcome determinative factual dispute that L.L. drove the Camaro with the belief that he was entitled to do so and that that belief was reasonable.

Examining the record evidence in the light most favorable to the non-moving party, here Sturch defendants, the Court concludes that there are disputed outcome determinative facts related to whether L.L. drove the Camaro with the belief that he was entitled to do so and whether that

belief was reasonable.  For these reasons, the Court denies State Auto's motion for summary judgment (Dkt. No. 21) and declines, at this time, to issue a declaratory judgment.

**VI.     Conclusion**

The Court denies both Sturch defendants and State Auto's motions for summary judgment (Dkt. Nos 16; 21).  The Court also declines, at this time, to issue a declaratory judgment.

It is so ordered this 16th day of December, 2022.

Kristine G. Baker
United States District Judge